**CARLSON LYNCH SWEET**
**KILPELA & CARPENTER, LLP**
Eric D. Zard (AZ 027431)
1350 Columbia Street, Suite 603
San Diego, California 92101
Telephone: (619) 762-1910
Facsimile: (619) 756-6991
ezard@carlsonlynch.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| LORIE GRABHAM, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC., a Delaware Corporation,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>(JURY TRIAL REQUESTED) |

Plaintiff Lorie Grabham, through undersigned counsel, for her complaint against American Airlines, Inc. hereby alleges as follows:

**JURISDICTION, VENUE AND JURY TRIAL DEMAND**

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. This action is authorized and instituted to enforce the requirements of the Equal Pay Act of 1963 ("EPA"), codified as Section 6(d) of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 206, *et seq.*

2. Pursuant to 28 U.S.C. § 1391, venue is proper in this Court as the events giving rise to this action occurred within the District of Arizona.

3. Plaintiff Lorie Grabham demands a jury trial for all issues in this case.

## PARTIES

4. Plaintiff Lorie Grabham ("Ms. Grabham" or "Plaintiff") is a resident of Glendale, Arizona.

5. Defendant American Airlines, Inc. ("AA" or "Defendant"), is a Delaware corporation with its corporate headquarters in Fort Worth, Texas and a second corporate office located at 4000 E. Sky Harbor Boulevard, Phoenix, Arizona 85034.

6. AA is the world's largest airline and operates a hub at Phoenix Sky Harbor International Airport in Phoenix, Arizona.

7. At all relevant times, AA has acted directly or indirectly as an employer in relation to employees and has continuously been an employer within the meaning of Section 3(d) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 203(d).

8. At all relevant times, AA has continuously employed employees engaged in commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(b), (i), and (j) and AA has continuously been an enterprise with an annual gross volume of sales made or business done in an amount not less than $500,000.00.

9. At all relevant times, Ms. Grabham was an employee of AA.

## GENERAL ALLEGATIONS

10. After graduating from Embry-Riddle Aeronautical University in 1995 and working for the Federal Aviation Adminstration from 1997 until 1998, America West Airlines, Inc. ("America West") hired Ms. Grabham as an InFlight Planning Senior Analyst in October 1998.

11. In May 2001, Ms. Grabham was promoted to Technical Operations Planning as a Senior Analyst where some of her job duties included developing and maintaining the American West strategic plan; forecasting America West maintenance requirements for heavy maintenance lines, modification lines, reliability lines and nightly maintenance locations; and performing analysis to track status and completion of all scheduled maintenance requirements on America West's fleets.

12. Around 2005, US Airways Group acquired America West Airlines, Inc.

and in October 2005, Ms. Grabham was promoted to Lead 1 Analyst. As a Lead 1 Analyst, some of Ms. Grabham's responsibilities included the following: establishing and maintaining working relationships with internal business customer departments, internal IT support groups and vendors; conducting business analysis and coordinating technology delivery to support business automation requirements of internal business customers; delivering technology solutions and communicating information technology plans; and project coordination.

13. From September 2008 until June 2009, Ms. Grabham changed departments and became the Manager of Commodity Technical Purchasing in order to develop her leadership and managerial skillset.

14. In June 2009, Ms. Grabham accepted a position back in the maintenance and engineering department as a Lead 1 Analyst. Ms. Grabham was one of several Senior Systems Analysts but she ultimately became the subject matter expert for the maintenance and engineering data warehouse.

15. Around December 2013, US Airways Group and American Airlines merged, and Ms. Grabham's pay-grade level was unified such that she went from a "Grade 167" with US Airways Group to a "Level 4" at American Airlines.

16. As a Grade 167/Level 4 Senior Business Analyst, Ms. Grabham was paid a base salary and received certain retirement and fringe benefits.

17. Similarly situated male Level 4 Senior Business Analysts received base salary and certain retirement and fringe benefits that resulted in more earned compensation than Ms. Grabham.

18. Around March 2014, the topic of compensation came up between Ms. Grabham and a male colleague that she had mentored in the past. That colleague was hired two years after Ms. Grabham as a Grade 167/Lead 1 Analyst but had a base salary that was at least 20% higher than Ms. Grabham's.

19. Ms. Grabham scheduled a meeting with her manager to discuss compensation and discuss the compensation differential between her and her male co-

worker. In May 2014, Ms. Grabham's manager submitted a formal request to AA's Human Resources department to increase Ms. Grabham's salary.

20. In December 2014, after not receiving a response to the formal request, Ms. Grabham sent an email to the Human Resource Director to follow up on her concerns with the compensation differential. The same month, Ms. Grabham had a call with another member of AA's Human Resources department where she discussed her concerns that she was being discriminated against in regard to the salary differential as a result of her gender.

21. As a result of AA's failure to respond, Ms. Grabham filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") in February 2015

22. Around October 2015, Ms. Grabham received a salary increase; however, upon information and belief, Ms. Grabham's earned compensation remained lower than similarly situated male employees that performed substantially equal work that required equal skill, effort, and responsibility, and which were performed under similar working conditions.

23. In April 2017, the EEOC sent Ms. Grabham a letter of determination stating that "there is reasonable cause to believe that [American Airlines] willfully violated Title VII and the EPA when it paid [Ms. Grabham] less than a male, for performing substantially similar work requiring equal skill, effort and responsibility, because of her sex.

## COUNT I
### FAILURE TO PAY EQUAL WAGE RATES IN VIOLATION OF THE EQUAL PAY ACT

24. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

25. The Equal Pay Act of 1963, as amended, prohibits employers from discriminating against employees "on the basis of sex by paying wages to employees

in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions..." 29 U.S.C. § 206(d)(1).

26. Since at least June 2009, AA violated the EPA by paying wages to Ms. Grabham at rates less than the rates paid to male employees who had worked in the same establishment for substantially equal work on jobs that required equal skill, effort, and responsibility, and which were performed under similar working conditions.

27. As a result of the acts alleged above, AA unlawfully withheld the payment of wages due to Ms. Grabham.

28. The unlawful practices described above were willful as AA knew and/or showed reckless disregard that its conduct violated the EPA. Therefore, a three-year statute of limitations applies to this claim.

29. As a result of Defendant's discriminatory conduct, Plaintiff is entitled to compensatory and punitive damages, attorneys' fees and costs, and all other legal or equitable relief permitted under 22 U.S.C. § 216.

*COUNT II*
**FAILURE TO PAY EQUAL WAGE RATES IN VIOLATION OF A.R.S. § 23-341**

30. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

31. Arizona Revised Statute § 23-341(A) provides, in part, that: "no employer shall pay any person in his employ at wage rates less than the rates paid to employees of the opposite sex in the same establishment for the same quantity and quality of the same classification of work, provided, that nothing herein shall prohibit a variation of rates of pay for male and female employees engaged in the same classification of work based upon a difference in seniority, length of service, ability, skill, difference in duties or services performed, whether regularly or occasionally, difference in the shift or time of day worked, hours of work, or restrictions or prohibitions on lifting or moving

objects in excess of specified weight, or other reasonable differentiation, factor or factors other than sex, when exercised in good faith."

32. Upon information and belief, there are no significant differences in the seniority, length of service, ability, skill, duties or services performed, shift or time of day worked, hours worked, or other reasonable differentiations, other than sex, that would justify paying Plaintiff a lower rate of pay.

33. By virtue of previously set forth facts, Defendant violated A.R.S. § 23-341(A) and paid Plaintiff less than similarly situated male counterparts for the same work.

34. Plaintiff is entitled to recover compensatory damages for the balance of unequal wages plus prejudgment interest, and attorneys' fees and costs, pursuant to A.R.S. § 23-341.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

A. A permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in gender-based disparate compensation and in any other employment practice which discriminates on the basis of sex;

B. Back wages in amounts to be determined at trial and an equal sum as liquidated damages for the wages unlawfully withheld;

C. Lost wages in amounts to be determined at trial and an equal sum as liquidated damages for the retaliation claim;

D. Prejudgment interest on all monetary claims;

E. Costs and attorney's fees incurred to bring this action; and

F. Awarding attorneys' fees and costs;

G. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

Dated: October 12, 2017

**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**

*/s/ Eric D. Zard*

Eric D. Zard (AZ 027431)
1350 Columbia Street, Suite 603
San Diego, California 92101
Telephone: (619) 762-1910
Facsimile: (619) 756-6991
ezard@carlsonlynch.com

Attorneys for Plaintiff